IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| METROPOLITAN WASHINGTON AIRPORTS AUTHORITY,<br>    Plaintiff,<br><br>v.<br><br>GARY G. PAN, COMMISSIONER, VIRGINIA DEPARTMENT OF LABOR AND INDUSTRY,<br>    Defendant. | Case No. 1:21-cv-01245-MSN-WEF |

## MEMORANDUM OPINION

This matter comes before the Court on cross-motions for summary judgment filed by Plaintiff (Dkt. No. 19) and Defendant (Dkt. No. 16). Upon consideration of the motions and for the reasons set forth below, the Court will grant Plaintiff's Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

**I.    PROCEDURAL HISTORY**

On November 10, 2021, Plaintiff Metropolitan Washington Airports Authority ("MWAA") filed a complaint challenging the authority of the Virginia Department of Labor and Industry ("DOLI") to enforce Virginia occupational safety and health regulations against MWAA. (Dkt. No. 1) ("Compl."). Defendant Gary Pan, the Commissioner of DOLI ("Commissioner"), filed an answer on February 22, 2022.[1] (Dkt No. 5). On August 31, 2022, cross-motions for summary judgment were filed by MWAA (Dkt. No. 19) ("Pl. Mot.") and the Commissioner (Dkt. No. 16) ("Def. Mot."). The parties each filed oppositions to the motions on September 30, 2022

---

[1]    MWAA originally named C. Ray Davenport, then serving Commissioner of the Virginia Department of Labor and Industry, as Defendant. Gary G. Pan has served as the current Commissioner since January 2022.

(Dkt. Nos. 22, 23), and replies in support of their motions on October 14, 2022 (Dkt. Nos. 24, 26). The Court is satisfied that oral argument would not aid in the decisional process. Accordingly, this matter is ripe for resolution.

II.     **STATEMENT OF UNDISPUTED FACTS**

MWAA and the Commissioner have submitted a Joint Stipulation of Facts Not in Dispute. (Dkt. No. 14) ("SOF"). The parties have each set forth a statement of undisputed facts in their respective motions, and neither party disputes the facts that the other has asserted. *See* (Dkt. No. 22 at 5 n.3; Dkt. No. 23 at 2–3). Accordingly, the Court finds the following to be undisputed material facts.

MWAA has operated Washington Dulles International Airport ("Dulles Airport") and Ronald Reagan Washington National Airport since 1987 pursuant to a lease between the United States and MWAA transferring control of the airports from the federal government to MWAA. Pl. Statement of Undisputed Material Facts (Dkt. No. 20 at 2) ("Pl. SOF") ¶ 3. MWAA was established "solely to operate and improve both metropolitan Washington airports." *Id.* ¶ 1 (citing Va. Code § 5.1-156(B); D.C. Code § 9-905(b)). MWAA is a public body "independent of all other bodies" created by joint action of Virginia and the District of Columbia and approved by the United States Congress. Def. Statement of Undisputed Material Facts (Dkt. No. 17 at 2) ("Def. SOF") ¶ 1. The compact creating MWAA is codified at Va. Code § 51.153 *et. seq.* and D.C. Code § 9-901 *et. seq.* (the "Compact" or "MWAA Compact"). *Id.* ¶ 2.

On April 28, 2020, an MWAA employee working at Dulles Airport injured his hand while performing preventative maintenance on equipment. Def. SOF ¶ 4. He sustained a partial amputation of the pinky finger and tendon damage to his ring and middle fingers. *Id.* On June 23, 2020, because of the incident, DOLI issued a citation to MWAA for violating several provisions,

including for noncompliance with Virginia Occupational Safety and Health ("VOSH") procedures. Pl. SOF ¶ 7; SOF ¶ 1. The citation imposed a penalty of $13,047 for each of two separate faulty items, for a total proposed fine of $26,094. *Id.* MWAA's appeal of the issuance of the citation was denied on September 25, 2021. SOF. ¶ 2. On October 14, 2021, MWAA served a Notice of Appeal on the Commissioner, asserting its intention to "reserve all issues relating to its immunity from Virginia Department of Labor and Industry jurisdiction under the Interstate Compact which created it . . . for review in federal court." *Id.* ¶ 3.

MWAA filed its complaint in this action on November 10, 2021. MWAA alleges that the Commissioner may not enforce Virginia's occupational safety and health regulations against it because it is an entity formed pursuant to an interstate compact and thus subject "only to federal law and the terms of the contract which created them." Compl. ¶ 4. MWAA seeks a declaratory judgment as well as injunctive relief enjoining the Commissioner from enforcing VOSH statutes or DOLI regulations against MWAA and imposing monetary citations upon MWAA. *Id*. ¶¶ 11, 28.[2]

### III.   LEGAL STANDARD

Summary judgment is proper where, viewing the facts in the light most favorable to the non-moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). The movant bears the burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp v. Carrett*, 477 U.S. 317, 327 (1986).

---

[2]   MWAA also filed a separate action in the Circuit Court for Arlington County concerning whether MWAA is a public employer under Virginia Occupational Safety and Health laws. SOF ¶ 5. The state court action was stayed on April 5, 2022 pending resolution of the federal action. *Id.* ¶¶ 5–7.

If the movant has met that burden, the non-moving party must demonstrate that such an issue of fact exists. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584–86 (1986). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (cleaned up). On cross-motions for summary judgment, the court "resolve[s] all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion" when considering the individual motion. *Id.* (cleaned up).

## IV. ANALYSIS

MWAA moves for summary judgment on the basis that the Compact is an interstate compact pursuant to the Compact Clause. MWAA argues that, as a matter of federal law and under the plain terms of the Compact, it has the exclusive authority to regulate the safety and health of its employees and is therefore not subject to Virginia's occupational safety and health statutes. The Commissioner moves for summary judgment on the basis that the District of Columbia is not a state that can enter into interstate compacts and the MWAA Compact is therefore not a compact under the Compact Clause. The Court finds that because MWAA is an interstate compact that falls within the scope of the Compact Clause, and because Virginia unambiguously surrendered its unilateral regulatory authority with respect to its occupational safety and health laws when the MWAA was created, MWAA's motion will be granted.

The Compact Clause provides that states may "enter into any Agreement or Compact with another State" so long as they obtain congressional consent. U.S. Const. Art. I, § 10, Cl. 3. ("Compact Clause").[3] The Court finds that the Compact between Virginia and the District of

---

[3] For purposes of the Compact Clause, the difference between a "compact" and an "agreement" is subtle, if not nonexistent. The Court uses "compact" here although the U.S. Supreme Court has itself treated the two terms as

4

Columbia creating the MWAA is an interstate compact under the Compact Clause. The Fourth Circuit has described the MWAA Compact as a "textbook example of an interstate compact." *Kerpen v. MWAA*, 907 F.3d 152, 159 (4th Cir. 2018).[4] Indeed, courts have consistently held that the MWAA Compact is an interstate compact. *Corr v. MWAA*, 800 F. Supp. 2d 743, 758–60 (E.D. VA. 2011), *aff'd*, 740 F.3d 295 (4th Cir. 2014) (finding that "MWAA's Compact is . . . the law of the United States" pursuant to the Compact Clause); *Washington-Dulles Transp., Ltd. v. MWAA*, 263 F.3d 371, 373 (4th Cir. 2001) (finding that Virginia and the District of Columbia, "acting pursuant to an interstate compact, jointly created MWAA for the sole purpose of leasing Dulles and Reagan National airports"); *Fairchild Corp v. MWAA*, 50 Va. Cir. 127, 1999 WL 600526, at *4 (Va. Cir. 1999) ("The legislation of Congress, the District of Columbia, and the Commonwealth of Virginia providing for the creation of the MWAA meets the two-pronged test used in determining the existence of a compact within the contemplation of [the Compact Clause] . . . .").

As an interstate compact created pursuant to the Compact Clause, the MWAA Compact has the full effect of federal law. Indeed, it has long been settled that "once a compact between States has been approved, 'it settles the line or original right; it is the law of the case binding on the states and its citizens.'" *Corr*, 800 F. Supp. at 758 (citing *Bush v. Muncy*, 659 F.2d 402 (4th Cir. 1981) (adoption transforms a compact into federal law at which time its interpretation and

---

essentially equivalent. *See Virginia v. Tennessee*, 148 U.S. 503, 520 (1892) ("Compacts or agreements—and we do not perceive any difference in the meaning, except that the word 'compact' is generally used with reference to more formal and serious engagements than is usually implied in the term 'agreement'. . . .").

[4]  The Commissioner argues that the holding in *Kerpen* was a narrow *factual* determination that the MWAA constituted an interstate agreement rather than a *legal* one. (Dkt. No. 24) (Def. Reply) at 5. In his Reply brief, the Commissioner argues that interstate compacts that fall within the scope of the Compact Clause must involve the sovereignty concerns of two states—and because the District of Columbia does not have any state 'sovereignty' to surrender, it cannot be a part of the Compact. *Id*. at 4. But the Commissioner's argument neglects the self-governance that Congress delegated to the District of Columbia through the Home Rule Act of 1973, which was designed to "relieve Congress of the burden of legislating upon essentially local District matters"—including the decision to enter interstate agreements. *See* (Dkt. No. 26) (Pl. Reply) at 16; D.C. Code § 1-201.02(a).

construction presented federal, not state, questions)); *see also West Virginia ex rel. Dyer v. Sims*, 341 U.S. 22, 33 (1951) ("The interpretation of the meaning of the compact controls over a state's application of its own law through the Supremacy Clause . . . ."). The MWAA Compact is, therefore, the law of the United States, which preempts conflicting state laws under the Supremacy Clause. *See New York v. New Jersey*, 143 S. Ct 918, 924 (2023); *Tarrant Regional Water Dist. v. Herrmann*, 569 U.S. 614, 628 (2013); *Alcorn v. Wolfe*, 827 F. Supp. 47, 52 (D.D.C. 1993) (holding that the Virginia governor may appoint members to the MWAA's Board of Directors in the manner specified by the Compact, preempting other state law requirements for confirmation); *Parkridge 6 LLC v. U.S. Dept. of Transp.*, No. 1:09CV1312, 2010 WL 1404421 at *6 (E.D. Va. 2010), *aff'd* 420 F. App'x 265 (4th Cir.) (rejecting Virginia's challenge of MWAA's toll-levying authority because "any Virginia law or provision . . . that conflicts with that authority is preempted under the Supremacy Clause").

MWAA's authority is governed under the terms of the MWAA Compact. *Corr*, 800 F. Supp. at 759; *New York v. New Jersey*, 143 S. Ct. at 924 ("This Court has long explained that interstate compacts are construed as contracts under the principles of contract law.") (quoting *Tarrant*, 569 U.S. at 628) (cleaned up). Here, the MWAA Compact is silent as to the authority of the states to enforce their labor laws. Virginia entered into an interstate compact with the District of Columbia by passing legislation to create MWAA. When it did so, it voluntarily surrendered its ability to exercise unilateral regulatory authority over MWAA's facilities. Virginia may not regain that unilateral authority once it has been ceded, unless it had reserved its authority over a particular domain in the Compact. *Delaware River Joint Toll Bridge Comm'n v. Sec'y Pennsylvania Dep't of Lab. & Indus.*, 985 F.3d 189 (3d Cir. 2021) ("By expressly creating the bi-state entity, [the compacting States] relinquished all control over the [entity] unless otherwise stated in the

compact."). In *Delaware River*, Pennsylvania attempted to assert its own building safety regulations despite having entered into an interstate compact with Delaware to jointly manage and operate facilities along the Delaware River's state boundary. 985 F.3d at 192. The Third Circuit rejected these attempts, noting that Pennsylvania had "unambiguously ceded" its sovereign authority to regulate unilaterally when it joined an interstate compact with the power "to acquire, own, use, lease, operate, and make improvements thereon." *Id.* at 195.

Like the interstate compact in question in *Delaware River*, the plain language of the MWAA Compact suggests that Virginia and the District of Columbia intended to cede their unilateral regulatory authority. Both jurisdictions granted MWAA the capacity to "plan, establish, operate, develop, construct, enlarge, maintain, equip, and protect the airports." Va. Code § 5.1-156; D.C. Code § 9-905. And the Compact's plain terms do more than delegate specific responsibilities to MWAA. They also specify areas where Virginia maintained its concurrent regulatory authority alongside MWAA—such as in policing, where the compact ensures Virginia's Department of State Police may "exercise the same power upon [MWAA] Facilities as elsewhere in the Commonwealth." Va. Code § 5.1-158. Virginia notably did not include a similar provision expressing its maintenance of regulatory authority over labor conditions. By construing the Compact as a contract—and relying on the four corners of the enabling legislation—this omission suggests that Virginia purposefully surrendered its unilateral regulatory authority over labor issues, and that DOLI is now trying to reassert the authority it no longer possesses. Virginia may not usurp MWAA's authority—which is codified with the full force of federal law—by enforcing unilateral workplace safety regulations as it seeks to do here.

The Commissioner's primary argument on summary judgment is that the District of Columbia cannot join an interstate compact because it is not a state. Accordingly—under the

7

Commissioner's theory—Virginia, as the only "state" party to the MWAA Compact, may exercise unilateral regulatory authority over MWAA's activity within the state. The Court finds this argument to be unpersuasive and concludes that the District of Columbia is a state for the purposes of the Compact Clause. "Whether the District of Columbia constitutes a 'State or Territory' within the meaning of any particular statutory or constitutional provision depends upon the character and aim of the specific provision involved." *District of Columbia v. Carter*, 409 U.S. 418, 420 (1970) (finding that the District of Columbia was not a state for purposes of a 42 U.S.C. § 1983 action). Courts must look to whether construing the District of Columbia as a state with respect to a particular statutory or constitutional provision would disrupt the jurisdiction's "unique status" as the seat of national government and whether Congress meant to include the District of Columbia when it passed statutory provisions that had been designed for states. *Id.* at 432.

      Courts contemplating the types of considerations set forth in *Carter* have previously held that the District of Columbia is a state in the context of MWAA. *E.g.*, *MWAA v. Citizens for Abatement of Aircraft Noise*, 501 U.S. 252, 266 (1991) (referring to the District of Columbia as a state in the context of the MWAA's Board oversight). Likewise, courts have extended constitutional provisions to the District of Columbia where those constitutional provisions only expressly referenced "states." *See Loughran v. Loughran*, 292 U.S. 216, 288 (1934) (applying the Sixth Amendment guarantee of an "impartial jury of the *State* . . . wherein the crime shall have been committed" to criminal prosecutions in the District of Columbia) (emphasis added); *Parker v. District of Columbia*, 478 F.3d 370, 396 (D.C. Cir. 2007), *aff'd*, *District of Columbia v. Heller*, 554 U.S. 570 (2018) (holding that the District of Columbia qualified as a state for purposes of Second Amendment incorporation). Here, there is nothing to suggest that treating the District of Columbia as a state in the context of the Compact Clause jeopardizes its "unique status." Nor is

there anything to suggest that such a finding controverts congressional intent, particularly because Congress consented to the existence of MWAA as a compact *between states* by authorizing it.

Accordingly, the Court finds that the District of Columbia is a state for the purposes of the Compact Clause and that the MWAA Compact is an interstate compact under the Compact Clause. Because Virginia did not reserve its right to regulate employee safety and health in the legislation enabling MWAA's creation, Virginia has no authority to either enforce VOSH statutes or DOLI regulations against MWAA or to impose monetary citations upon MWAA for any such violations.

## V.   CONCLUSION

For the reasons stated above, the Court will grant MWAA's Motion for Summary Judgment (Dkt. No. 19) and deny the Commissioner's Motion for Summary Judgment (Dkt. No. 16) in an Order to be issued with this Memorandum Opinion.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

June 27, 2023
Alexandria, Virginia